Gen. 347]                                                                347

## PUBLIC ASSISTANCE

**AUTHORITY TO INITIATE WELFARE REFORM PROGRAM**


May 6, 1994


*The Honorable Howard P. Rawlings*
*House of Delegates*


You have requested our opinion regarding the Governor's authority to proceed with a welfare reform pilot program if House Bill 482 is vetoed. Specifically, you have raised the following questions:

1.    Does the Governor have the authority to implement a welfare pilot reform program that is, as you put it, "contrary to legislative intent"?

2.    Can the State obtain a "federal waiver" to implement a program that is not codified in statute but instead is embodied in regulation only?

For the reasons stated below, we conclude as follows:

1.    At the direction of the Governor, the Department of Human Resources ("DHR") may exercise its existing statutory authority to implement a welfare pilot program containing elements, like a "family cap," that the General Assembly chose to remove from House Bill 482, whether or not that bill is vetoed. The Legislature's decision to drop from the bill specifications for a "family cap" simply has no effect on the scope of statutory authority that the Legislature *previously* granted DHR.

2.    The State is not prevented from seeking, nor is the federal government prevented from granting, a waiver from federal statutory requirements merely because the program that would be subject to the waiver is in regulation rather than in statute.

# I

## Background

The Aid to Families With Dependent Children ("AFDC") Program is a public assistance cash grant program funded by both the federal and State governments and administered by the states pursuant to both federal and State law. Title IV-A of the federal Social Security Act, 42 U.S.C. §601 *et seq.*, and the regulations adopted pursuant to it establish both mandatory program requirements and a range of options that a state may adopt. In Maryland, DHR administers the AFDC Program and files a State Plan with the U.S. Department of Health and Human Services ("HHS") setting forth the specifics of the program in Maryland.

The Social Security Act authorizes the Secretary of HHS to waive certain provisions of the Act to permit states to conduct an "experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of" selected portions of the Act, including the portion establishing the AFDC Program. 42 U.S.C. §1315(a). This grant of authority is quite broad, extending to demonstration projects that diminish rights otherwise afforded under the Act. *Aguayo v. Richardson*, 473 F.2d 1090, 1104-05 (2d Cir. 1973), *cert. denied,* 414 U.S. 1146 (1974).[1]

The Income Maintenance Administration of DHR is charged under State law with administering the AFDC Program, subject to the authority of the Secretary of Human Resources. Article 88A, §§1A and 46 of the Maryland Code.[2] State statute establishes the AFDC Program in Maryland but sets few restrictions on the administration of the program. Article 88A, §§44A through 58. Specific program requirements are instead established in law by the Executive Branch through regulations found at COMAR 07.03.02.

---

[1] No regulations elaborate on the HHS Secretary's exercise of discretion in granting waivers. HHS has made it clear, however, that waiver requests will not be granted unless they cause no increase in federal costs and satisfy stringent research requirements.

[2] The Secretary, in turn, is "directly responsible to the Governor ...." Article 41, §6-101(b).

Early in the 1994 Session of the General Assembly, the Schaefer Administration proposed legislation, cross-filed as Senate Bill 311 and House Bill 482, the short title of which was "Welfare Reform Pilot Project." The bill that passed, House Bill 482, requires DHR to pursue waivers from the Secretary of HHS in order to establish the AFDC pilot project specified in the bill.[3]

The welfare reform proposal was controversial, particularly the so-called "family cap," a provision that generally would have prevented a recipient's AFDC grant amount from automatically increasing due to the birth of additional children. The "family cap" provision was eliminated from House Bill 482 before final passage. In your view, as stated in your letter requesting this opinion, House Bill 482 in its final form "clearly expresses the General Assembly's intent and position on the proper policies to implement successful welfare reform." You characterize the "family cap" provision in particular as "not acceptable to the General Assembly ...."

## II

### Existing Legal Authority

DHR has broad authority under existing law to adopt regulations implementing a welfare reform pilot project. In our opinion, House Bill 482 does not affect that existing authority. That is, if House Bill 482 is signed into law, it will impose certain requirements on DHR regarding a welfare reform pilot program but will not diminish DHR's authority under other, unamended statutory provisions to proceed with welfare reform initiatives beyond those in House Bill 482. Likewise, if House Bill 482 is vetoed, DHR will have precisely the same authority as it has today to establish a welfare pilot project, including the family cap if that is what DHR thinks is wise policy.

DHR has both general authority to adopt regulations concerning subjects within its purview and specific authority to regulate the AFDC Program. Subject to review by the Secretary of Human Resources, the State Director of Income Maintenance is

---

[3] There is no question but that waivers would be required to modify the AFDC Program as contemplated in the bill. Amendment of the State Plan alone would be insufficient.

authorized to adopt "such rules and regulations as may be necessary to carry out any of the duties imposed upon him by law." Article 88A, §5(a). *See also* Article 41, §§1-201 and 6-104(b) and Article 88A, §1A. Among those duties is administration of the AFDC Program. Article 88A, §46(a). Further, the AFDC subtitle of Article 88A mandates adoption of such rules and regulations "as may be necessary or desirable for carrying out the provisions of this subtitle" and requires that AFDC benefits be provided "in accordance with the rules and regulations of the State Department." Article 88A, §§46(b) and 52. Finally, State statute authorizes DHR to "take advantage of the federal Social Security Act and any amendments and supplements thereto, and any other federal act relating to social services and public assistance." Article 88A, §15.

DHR's regulatory authority must be exercised within the constraints imposed by statute, of course. *Falik v. Prince George's Hosp.*, 322 Md. 409, 588 A.2d 324 (1991). In the case of AFDC, the General Assembly has given DHR broad discretion to craft this complex program, with few specific program requirements in statute. Article 88A, §48 grants AFDC benefits to any individual who (1) is a Maryland resident, (2) assigns support rights to the State, (3) maintains suitable living conditions for children in the home, and (4) "[m]eets the other requirements determined by the [Income Maintenance] Administration." In addition, Article 88A, §45(c) defines the term "dependent child" in a manner paralleling federal law.[4] So long as any welfare reform pilot program does not contravene these few requirements, the Governor, through the Income Maintenance Administration, may create the pilot program by means of regulations adopted under the authority of Article 88A, §§48(4) and 46(b).

House Bill 482 adds to, but does not otherwise disturb, this statutory scheme. The bill would provide for a new section, Article 88A, §54A, to require the Secretary of Human Resources to create

---

[4] The federal definition of "dependent child" is found in 42 U.S.C. §§606(a) and 607(a), neither of which is subject to waiver under 42 U.S.C. §1315(a). Consequently, the State definition of "dependent child" does not impose any separate limitation on the Governor's authority to request a federal waiver.

a welfare pilot program with specific provisions, subject to the federal waiver approval necessary to obtain federal funding under the AFDC Program. The bill does not purport to diminish the authority already granted by §§46(b) and 48(4) and the other provisions of current law cited above. Thus, even if it is signed into law, House Bill 482 would not prevent DHR from making additional changes to the AFDC Program.

Moreover, passage of House Bill 482 cannot be read as evidence of legislative intent as to statutes on the books for years. The General Assembly's failure to pass a provision does not affect an agency's existing statutory authority. 77 *Opinions of the Attorney General* 110 (1992). If an agency has broad rulemaking authority that could be used to take an action, the General Assembly's failure to authorize the action explicitly in a statute is not legally material.

In short, if House Bill 482 becomes law, it will not repeal by implication any of the provisions discussed above giving DHR broad authority over the AFDC Program. *See generally, e.g., Department of Nat. Resources v. France*, 277 Md. 432, 460, 357 A.2d 78 (1976) (repeal by implication disfavored). Likewise, if House Bill 482 is vetoed, nothing about it − including the amendment deleting the "family cap" − could have any effect whatever on DHR's existing authority.

It may well be that a majority of members of the General Assembly think that the "family cap" is a bad idea and ought not be imposed. But that legislative point of view was not enacted into law. Whether DHR would be wise to proceed with a "family cap" in the face of the General Assembly's decision to amend it out of House Bill 482 is a significant political and policy issue, of course, but it is not a legal one.

## III

### Federal Authority To Grant Waivers

As discussed in Part I above, the Secretary of HHS has broad discretion to waive portions of the Social Security Act: "The limitation, and the only limitation imposed on the Secretary was that

he must judge the project to be 'likely to assist in promoting the objectives' of the designed parts of the Social Security Act." *Aguayo*, 473 F.2d at 1105 (quoting 42 U.S.C. §1315(a)). There is no federal restriction on the source of state authority underlying a state agency's waiver request. Federal law simply requires that the state identify a state agency with authority to administer or supervise the administration of the AFDC Program. A state does so through a certification in the AFDC State Plan. 42 U.S.C. §602(a)(3); 45 C.F.R. §205.100. Maryland has provided that certification to HHS.

HHS's willingness to accept State regulations as authority to conduct a pilot project has been demonstrated by Maryland's Primary Prevention Initiative ("PPI"). PPI is a pilot project operated pursuant to a five-year waiver granted by HHS. There is no State statutory authority for PPI beyond the general provisions discussed above pertaining to AFDC Program administration. The necessary authority to implement PPI is instead found in State regulations at COMAR 07.03.02.01J. HHS showed no reluctance to accept the authority of a regulation to establish PPI in Maryland.

If the waiver request regarding a "family cap" were thought by HHS to be especially controversial, a legislative endorsement of the idea might prove useful in gaining the waiver. But this is a tactical consideration not related to DHR's or HHS's legal authority.

## IV

### Conclusion

In summary, it is our opinion that:

1. At the direction of the Governor, the Department of Human Resources ("DHR") may exercise its existing statutory authority to implement a welfare pilot program containing elements, like a "family cap," that the General Assembly chose to remove from House Bill 482, whether or not that bill is vetoed.

2. The State is not prevented from seeking, nor is the federal government prevented from granting, a waiver from federal statutory

requirements merely because the program that would be subject to the waiver is in regulation rather than in statute.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

Steven D. Keller
*Assistant Attorney General*

**Editor's Note:**

House Bill 482 was vetoed. The Governor's veto message is published in VI Laws of Maryland 1994, at 3865.